# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM J. HIBBLER | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 6657 | DATE | July 29, 2002 |
| CASE TITLE | Timothy J. Cunningham, Sr. (IDOC ID# R05718) v. Sheriff's Deputy Grozik, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Correctional officer defendants' motion to dismiss [19-1] is denied, except that no claim for denial of medical care is alleged against defendant Grozik. Defendant Sloan's motion to dismiss [30-1] is denied.

(11) ■ For further detail see memorandum opinion and order attached to the original minute order.

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 01 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| KS | courtroom deputy's initials | 02 JUL 31 PM 10: 23 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY J. CUNNINGHAM, Sr., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SHERIFF'S DEPUTY GROZIK, et al., )<br>)<br>Defendants. ) | No. 01 C 6657<br><br>Judge Hibbler |

DOCKETED
AUG 0 1 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Timothy J. Cunningham, Sr., filed this pro se civil rights action under 42 U.S.C. § 1983, alleging that he was subjected to brutal treatment and denial of medical care while confined at the Will County Adult Detention Facility (WCADF). On November 30, 2001, the court granted Cunningham leave to proceed in forma pauperis. Defendants Grozik, Jones, Chester, Cerillo, Langford, Martin, Parker and Beck (the "correctional officer defendants") have joined in a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P. for failure to state a claim upon which relief may be granted. Defendant Sloan has filed a separate motion to dismiss on different grounds. The court will consider both motions.

A motion to dismiss asks only whether the complaint states a claim upon which relief may be granted; that is, assuming that the plaintiff's allegations are true, can the court do anything for him? The court must not only assume that the plaintiff's allegations are true; it must draw every reasonable inference in the plaintiff's favor. *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). A pro se complaint is held to less stringent standards than a complaint drafted by an attorney, and is to be liberally construed. *Id.*

### ALLEGATIONS OF THE COMPLAINT

Cunningham alleges that while incarcerated at WCADF in 1999 he had observed a "theft ring" operated by other inmates in "A-pod," the unit in which he was confined. His attempts to inform authorities were ignored, and he was sent to the disciplinary unit on fabricated charges. On August 19, 1999, Cunningham was exonerated by the disciplinary review board. At about 8:30

p.m. on August 21, 1999, less than two hours after Cunningham had been returned to the pod, a surprise lock-down drill was conducted. Cunningham was slammed into a concrete wall and lost consciousness; he recovered consciousness to find defendant Grozik kicking him. He was later told by another inmate that after he had been thrown against the concrete wall, he had been shoved into the metal doorframe of his cell, and slammed onto the concrete floor.

Other inmates helped Cunningham into bed and sent for medical attention. Cunningham's head, shoulders, back and toes hurt and it was painful for him to move; his arms and legs were numb and tingling. His right eye, cheek and mouth were twitching, he had muscle cramps and spasms and blood in his urine. His request to see the nurse on her usual evening rounds was ignored. After Cunningham had been unable to rise for three successive head counts, a nurse and a group of E.R.T. (Emergency Response Team) officers came to the cell. The nurse took his blood pressure and temperature and told him to get up. When Cunningham failed to comply, the officers forced him into a sitting position and threw him into a wheelchair, where he lost consciousness again. At the medical unit, he was aroused with cold water and accused of faking. He was thrown into a bunk, where he passed out again. Unable to get to the cell door to get his food trays, he did not eat until August 23, when he was finally visited by a doctor. Told to bend his knees and elbows, Cunningham painfully complied, whereupon the doctor pronounced him well and left the cell.

Twenty minutes later, Cunningham again passed out trying to get up and cracked his forehead open. He was taken to St. Joseph's hospital where a CAT-scan was taken of his head and X-rays of his spine. He was given an injection of pain medication and returned to WCADF.

About a week later Cunningham was put in a two-person cell. His cellmates were told not to help him and he had to give them food to induce them to assist him with his daily needs. Defendant Nurse Sloan constantly told him there was nothing wrong with him. He was given Tylenol and a weak muscle relaxant. His condition gradually improved. Late in October he was able to sit, then limp, but his complaints of pain were met with ridicule and harassment.

Cunningham states than in November of 1999 he was returned to the intake pod, then put in maximum security, then protective custody. He does not explain the reason, or asserted reason, for these moves. On December 27, 1999, a group of E.R.T. officers cuffed his hands behind his

2

back and hoisted him by his cuffed wrists, causing him to lose consciousness from the pain. Defendant Ragoni was the only officer he saw clearly enough to identify. He awoke in "the hole" on a mat on the floor, and found footprints on his T-shirt and briefs. (He had been stripped of his jail uniform.) On December 29, 1999 he was taken again to Silver Cross Hospital, but was given no treatment or tests, only an injection of pain medication, and he was returned to WCADF.

Again Cunningham was virtually paralyzed. He could not use the toilet, and could not eat until an officer pulled his mattress near the door so that he could reach his food.

Cunningham alleges that a number of officers tortured him in various ways. Defendant Deputy Jones denied him access to a wheelchair three days in a row, and when another officer obtained a wheelchair for him, Jones tried to throw him out of it. Defendant Deputy Langford disciplined him for being unable to rise quickly enough for a head count, ordered salt an pepper withheld, and "deadlocked" him in his cell. Defendant Deputy Parker wrote him a ticket for being unable to put on his uniform shirt, would not allow him to receive assistance in putting it on, and ordered him kept on deadlock until he wore it. Deadlock deprived Cunningham of access to the telephone, showers, television and the library. Defendants Cerillo, Parker, Beck, and Chester "tossed" his cell frequently (we assume this means a shakedown search) and confiscated his extra mattress on fourteen occasions. Cunningham alleges that Cerillo, Chester, Ragoni, Langford, Martin, Parker, Beck and Jones threatened to hang him, making it appear as if he had committed suicide, if Cunningham sued them.

In April of 2000, Cunningham's parents obtained the hospital reports and radiological results from August 21-23, 1999. The report stated that a compression fracture deformity was the cause of Cunningham's back pain. Cunningham alleges that in November or December of 2000 he was told by the jail doctor that he had consulted Dr. Duffy, an orthopedist, and that they had recommended that Cunningham be seen by a neurologist, but "his boss," whose name Cunningham was not given, had overruled the recommendation. Cunningham states that he was able to obtain a court order (presumably from the court handling his criminal trial) for a wheelchair and a neurological examination. The consulting neurologist ordered an MRI examination, which Cunningham never received. Cunningham also alleges that the medications prescribed have been

3

inadequate, and that they were not refilled for extended periods of time, causing excruciating pain and immobility.

## I. CORRECTIONAL OFFICERS' MOTION TO DISMISS

### A. Statute of Limitations

Cunningham's complaint was received by the court on August 27, 2001, and defendant Grozik moves to dismiss Cunningham's claim arising from the incident of August 21, 1999, as barred by the two-year limitations period for § 1983 claims. Grozik is correct that Illinois' two-year limitations period for personal injury claims, 735 ILCS 5/13-202, governs § 1983 actions arising in Illinois. *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001). Nevertheless, the date a complaint is received by the court is not dispositive for pro-se prisoner suits.

*Houston v. Lack*, 487 U.S. 266 (1988), held that because a prisoner cannot control when his letters will be mailed, a prisoner's notice of appeal is deemed filed when it is delivered to prison authorities for forwarding to the court. The Seventh Circuit has assumed, without expressly deciding, that the *Houston* "mailbox rule" applies to other *pro se* prisoner filings. *Jones v. Bertrand*, 171 F.3d 499, 501-02 (7th Cir. 1999), applied the rule to a petition for habeas corpus. The Seventh Circuit recently stated in *Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001), "[w]e need not decide here whether there is any kind of paper, or any circumstance, under which a district court would be entitled to hold a *pro se* prisoner litigant to an actual receipt standard, but we are confident that this would be an exceptional situation." Accordingly, the complaint will be deemed to have been filed on the day it was given to the prison staff for mailing.

The envelope containing the complaint is postmarked August 21, 2001, the latest date the complaint could be deemed filed. The earliest date would be August 18, 2001, the date of the notarial attestation of the signature on the complaint. This is prima facie evidence that the complaint was given to correctional staff before August 21, 2001, and is sufficient to defeat a motion to dismiss.

4

## B. Denial of Medical Care

The correctional officer defendants move to dismiss Cunningham's "remaining claim" of inadequate medical care, contending both that Cunningham has not stated a claim at all, and that in any event he has not stated a claim against them.

The court disagrees. First, apart from Cunningham's claim that he was assaulted and injured, he has not only alleged denial of medical care, but other forms of constitutionally forbidden punishment as well.

Cunningham was a pretrial detainee at WCADF. While the Eighth Amendment forbids "cruel and unusual punishment" of convicted prisoners, treatment of pretrial detainees is governed by the Due Process Clause of the Fourteenth Amendment, which forbids any condition of confinement amounting to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Nevertheless, with respect to conditions of confinement, a claim under the Fourteenth Amendment is evaluated by the same standard as an Eighth Amendment claim. *Zentmeyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000). The Constitution is violated by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05, (1976). The Constitution is also violated if a pretrial detainee is denied "basic human needs" or "the minimal civilized measure of life's necessities." *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996)(*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Cunningham not only alleges that he did not receive proper medical care, but that he was tortured when deputies put his food out of his reach and did not make it possible for him to urinate and defecate without soiling himself. These actions, which defendants' motion does not address, could amount to constitutional violations in themselves.

Even with respect to a claim of denial of medical care, the court is not persuaded that Cunningham has not stated a claim against defendants. Defendants note that Cunningham alleged that he received medical care on several occasions. But the fact that a prisoner received some treatment does not necessarily defeat his claim; deliberate indifference to a serious medical need be manifested by "woefully inadequate action" as well as no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999).

5

Defendants argue that they were not responsible for Cunningham's medical care, and that in any event a dispute concerning appropriate treatment is not a constitutional violation. It is true that medical malpractice is not a constitutional violation; unless the defendant is deliberately indifferent to the plaintiff's serious medical needs, a professional's choice of treatment cannot be challenged under § 1983. *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Forbes v. Edgar*, 112 F.3d 262, 266-67 (7th Cir. 1997). Nevertheless, Cunningham claims that his treatment was inadequate because defendants pressured medical personnel to deny him treatment and lied concerning the extent of his pain and disability. If Cunningham suffered from inadequate treatment because the defendants induced a misdiagnosis by intentionally misrepresented his condition, they are liable. And in the case of Jones, whom Cunningham alleges took away his wheelchair, there was interference with treatment after it had been prescribed.

Finally, defendants argue that Cunningham has failed to state a claim because he has not alleged that any of them saw Cunningham's medical records or otherwise had reason to know that he had a compression fracture deformity. Again, defendants are half right. Liability for deliberate indifference to a prisoner's serious medical need requires that the defendants have had actual knowledge of that need. *Zentmeyer*, 220 F.3d at 811. Nevertheless, drawing reasonable inferences in Cunningham's favor, the deputies responsible for his care had reason to know he was in severe pain and could not move, whether or not they knew the medical diagnosis for the condition producing the pain. Severe and persistent pain evidences a serious condition requiring treatment. *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). *See Chavez v. Cady*, 207 F.3d 901 (7th Cir. 2000)(officers who knew of detainee's serious illness and pain could be found to have been deliberately indifferent even though the nurse had failed to diagnose appendicitis).

Defendants also assert that Cunningham has not adequately alleged their personal involvement in denying him medical care. As noted above, Cunningham complains about more than medical care. In any event, Cunningham is not attempting to assert some form of derivative liability, but is suing those he claims personally contributed to his suffering. Cunningham states at p. 23 of his opposition to the defendants' motion that all defendants except Grozik interfered with his access to medical services. The complaint lacks specific allegations with respect to some claims, but if defendants are unable to answer, the proper response is a motion for more definite statement under

Rule 12(e), rather than a motion to dismiss. *See Scott v. City of Chicago*, 195 F.3d 950, 952 (7th Cir. 1999). Accordingly, the court grants defendants' motion only to the extent that no claim for denial of medical care is asserted against defendant Grozik, and it is otherwise denied.

## II. NURSE SLOAN'S MOTION TO DISMISS

Represented by separate counsel, defendant Sloan has filed a separate motion to dismiss. She asserts that Cunningham cannot proceed because he has not exhausted available administrative remedies, and that the complaint does not state a claim against her.

### A. Exhaustion of Administrative Remedies

Because Cunningham is presently in the custody of the Illinois Department of Corrections (IDOC), he is subject to 42 U.S.C. § 1997e(a), requiring prisoners to exhaust available administrative remedies before bringing suit under 42 U.S.C. § 1983 or other federal statutes. Cunningham alleged in his complaint that he "wrote grievances and appealed false or outrageous answers," and checked the box on the complaint form to indicate that the grievance procedure had been completed. Since allegations in a complaint are taken as true for purposes of a motion to dismiss, this adequately alleges that Cunningham exhausted administrative remedies. Nevertheless, Sloan contends that under IDOC's administrative rules, 20 Ill. Admin. Code § 504.800, *et seq.*, Cunningham was required to appeal to IDOC's Administrative Review Board, yet did not allege in his complaint that he had done so.

The Will County Adult Detention Facility is operated by Will County, not IDOC. By its terms, IDOC's grievance regulations apply "to committed persons assigned to correctional facilities within the Department of Corrections." 20 Ill. Admin. Code § 504.800. Sloan's objection that Cunningham failed to allege that he had followed completely inapplicable administrative procedures is frivolous.[1]

---

[1] Cunningham provided a copy of WCADF's Inmate Handbook as a supplementary exhibit to his response to the correctional officers' motion to dismiss. The Inmate Handbook's description of the institution's inmate grievance procedure contains no reference to IDOC's Administrative Review Board.

7

## B. Sufficiency of Cunningham's Allegations

A plaintiff responding to a motion to dismiss may supplement his complaint with additional allegations as long as they are consistent with the complaint. *Help at Home, Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001). Cunningham has submitted an affidavit containing additional allegations together with his brief in opposition to Sloan's motion to dismiss, and the court considers these allegations together with the allegations in the complaint.

Cunningham alleges that on August 23, 1999, Sloan, the head nurse, accompanied a doctor to Cunningham's cell. (The complaint recounts the doctor's visit without mentioning Sloan.) After seeing that Cunningham could bend his elbows and knees, the doctor told Cunningham to get up. The doctor did not physically approach Cunningham. When the doctor saw that Cunningham did not get up, the doctor left and Sloan followed, slamming the door. Aff. ¶¶ 23-24.

If Sloan had refused to treat Cunningham because she agreed with the doctor's diagnosis that Cunningham had nothing wrong with him, she could not be liable under § 1983, since a constitutional violation requires actual knowledge of a serious risk to the plaintiff. Nevertheless, that is not the only possible inference from Cunningham's allegations, and in deciding a motion to dismiss the court must draw reasonable inferences in Cunningham's favor.

Sloan had seen the doctor "diagnose" Cunningham by observing from a distance as Cunningham attempted to bend his knees and elbows, ignoring Cunningham's assertions that it hurt too much to rise. If such a diagnosis was such a substantial departure from accepted professional practice or standards as to demonstrate that the doctor was not exercising medical judgment at all, it could be inferred that the doctor was deliberately indifferent to Cunningham's condition. *See Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001); *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). It follows that if Sloan, herself a medically trained professional, knew that the doctor had not made a professional diagnosis, her failure to act -- at least to conduct her own examination of Cunningham -- could also render her liable.

A correctional official is liable for a constitutional violation committed by another if he or she has a reasonable opportunity to intervene and fails to do so. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477-78 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). While these cases involve the use of

excessive force by one officer in the presence of another, there is no reason why the rule should not apply in the context of medical care. Obviously, one medical professional should not interfere with another's medical judgment. But if it becomes clear that a fellow professional has *not* exercised professional judgment in response to a serious medical problem, another medical professional may not ignore a serious risk to a prisoner's life or health if he or she has a reasonable opportunity to intervene. Sloan may have been under the doctor's authority and have been powerless to help Cunningham, but the court cannot make that assumption at this point.

Cunningham alleges that Sloan told his cellmates not to help him by bringing him food or by emptying the cups Cunningham was forced to use to collect his urine and feces. Aff. ¶31. Cunningham also alleges that Sloan directed other nurses, over whom she presumably did have authority, not to assist Cunningham in putting on his shirt so that he would be disciplined and confined to his cell. Aff. ¶ 54.

Cunningham alleges that Sloan conspired with deputies to record instances in which Cunningham moved and stood, however painfully, in order to confirm that he was malingering. By misrepresenting his condition, she misled doctors to withhold medications and the use of a wheelchair. Aff. ¶¶ 32-34. After Cunningham was assaulted the second time, Sloan directed that food not be brought to him, causing him to miss seventeen meals in succession. ¶45.

Taking these allegations as true, it can be inferred that Sloan did not merely accept the diagnosis of other professionals that Cunningham was malingering, but conspired to procure that diagnosis, while having reason to believe that Cunningham's pain was real. Cunningham's allegations are comparable to those in *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 427 (7th Cir. 1991), where the plaintiff, suffering from a gunshot wound that had injured his spine, was told by the defendant physician that there was nothing wrong with him. The defendant transferred the plaintiff to a psychiatric ward where he could not keep his crutches and leg brace, and ordered that the plaintiff's bed be moved away from the toilet so that he would have to walk to use it. Sloan may have honestly believed Cunningham was malingering, and Cunningham may have actually been malingering, but accepting his allegations as true, Cunningham has stated a claim.

The court accordingly grants the correctional officer defendants' motion to the extent that any claim against defendant Grozik for denial of medical care is dismissed, and the motion is denied in all other respects. Defendant Sloan's motion to dismiss is denied.

IT IS SO ORDERED.

William J. Hibbler, Judge
United States District Court

DATED: 7/29/02