Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 6657 | DATE | 4/30/2004 |
| CASE TITLE | Cunningham v. Grozik et. al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion for Summary Judgment (Doc. # 98)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
     ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]. Enter Memorandum Opinion and Order. For the attached reasons, Defendants' motion for summary judgment (doc. #98) is GRANTED in part and DENIED in part. Defendants Grozik's and Ruguone's motion for summary judgment with regard to Cunningham's excessive force claim is DENIED. Defendants' motion for summary judgment with regard to Cunningham's deliberate indifference claim is GRANTED. Cunningham's Complaint is DISMISSED as to Defendants Jones, Chester, Cerillo, Langford, Martin, Parker, and Beck. Status hearing to set trial schedule on 5/17 at 9:30 a.m.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | 5-3-04 date docketed | |
| ✓ | Docketing to mail notices. | | | 113 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY J. CUNNINGHAM, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 01 C 6657 |
| ) | |
| ) | The Honorable William J. Hibbler |
| SHERIFF DEPUTY GROZIK, CORRECTIONAL ) | |
| OFFICERS JONES, CHESTER, CERILLO, ) | |
| LANGFORD, MARTIN, PARKER, RUGUONE, ) | |
| AND BECK ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Timothy Cunningham, Sr., a detainee who was awaiting trial at the Will County Adult Detention Facility, brings this civil rights action against Sheriff Deputy Grozik and Correctional Officer Ruguone, alleging that each of them used excessive force against him. Cunningham also sued Correctional Officer Ruguone and several other Correctional Officers because they failed to provide appropriate medical care after the alleged assaults. For the reasons stated herein the motion is GRANTED in part and DENIED in part.

I. Factual Background

Cunningham was detained at the Will County Adult Detention Facility (WCADF) from April 1999 to July 2001. (Def. 56.1(a)(3) Statement of Facts (Def. Statement), ¶ 5). On August 21, 1999, the WCADF conducted "lockdown drill." (Def. Statement, ¶ 31). During a lockdown drill, inmates are to proceed immediately to their cells or lay on the floor in common areas if they cannot get to

1



their cells. (Def. Statement, ¶ 33). When Cunningham was approximately four to six feet from his cell, Deputy Grozik approached him from behind. (Pl. 56.1(b)(3)(B) Statement (Pl. Statement), ¶ 4; Cunningham Dep. at 33).[1] This is where the parties' version of the facts diverge.

According to Cunningham, Grozik slammed him into the wall. (Pl. Statement, ¶¶ 5-6; Cunningham Dep. at 32-34). Cunningham testified that as a result, he suffered a blow to the head that caused him briefly to lose consciousness. (Pl. Statement, ¶¶ 5-6; Cunningham Dep. at 32-34). Cunningham further claims when he awoke, Grozik was kicking him and yelling at him. (Pl. Statement, ¶ 9; Cunningham Dep. at 35). Cunningham claims that Grozik then walked away, laughing, and "high-fived" the other officers. (Pl. Statement, ¶ 10; Cunningham Dep. at 39). Another inmate, Christopher McDonald, corroborated Cunningham's version of events in his deposition. (Pl. Statement, ¶ 7; McDonald Dep. at 14-15). Grozik denies assaulting Cunningham and testified that he merely touched Cunningham on the shoulder and instructed him to get on the ground. (Grozik Dep. at 46).

---

[1] Throughout the Plaintiffs' 56.1(b)(3)(B) Statement of Facts, counsel for the Plaintiff, Jenner and Block, consistently cites to the Complaint. This is inappropriate on summary judgment. At summary judgment, the non-moving party must go beyond the pleadings and allege specific facts demonstrating a genuine issue for trial through his own affidavits, depositions, answers to interrogatories, or admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986); *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001). Counsel for Plaintiff is fortunate that the Defendant did not move to strike these paragraphs. However, counsel's lackadaisical effort in preparing the 56.1 Statement places the burden of scouring the record for the facts upon the Court. "That is not the appropriate relation between advocates and the judiciary." *United States v. Castellano*, 349 F.3d 483, 485 (7th Cir. 2003); *see also Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 547 n. 10 (7th Cir.2002) (it is not the responsibility of the Court to scour the record looking for support for a party's argument). In the end, a review of Cunningham's deposition, frequently cited by Defendants, points the Court to the factual information Cunningham relies upon. Counsel is warned, however, that in the future it should take care to direct the Court to the parts of the record that provide factual support for its arguments.

After the incident, Cunningham claims that his head, shoulders, back, hands, and toes ached and that he had a bruise on his left thigh, a cut on his left big toe, and a cut above the right eye. (Cunningham Dep. 40-42). Cunningham also claims that after the attack he was unable to walk because of pain radiating from his lower back to his neck and that he had to be assisted by other detainees back to his cell. (Cunningham Dep. at 42-44). Later that evening, he completed a medical request form in order to obtain medical care. (Pl. Statement, ¶ 17). The next day, Cunningham was transferred to the medical unit within the WCADF. (Def. Statement, ¶ 40).

On August 23, 1999, Cunningham became dizzy, fell, and struck his head, leaving a small bruise on his forehead. (Def. Statement, ¶ 41). Cunningham was then taken to the emergency room at Provena/St. Joseph Hospital, where he was examined by Dr. Edwin Veguilla. (Def. Statement, ¶¶ 42-43). Dr. Veguilla noted that Cunningham had an abrasion and a contusion on his forehead. (Dr. Veguilla Dep. at 10-11). Dr. Veguilla, however, found no other bruises or cuts on Cunningham's body. (Dr. Veguilla Dep. at 11-12). Dr. Veguilla also observed that Cunningham had "some pain of his neck...[and] some diffuse tenderness of his lumbar spine," and he diagnosed Cunningham with a strained neck and back. (Dr. Veguilla Dep. at 33, 38). Dr. Veguilla took a CAT scan of Cunningham's brain, which revealed soft tissue swelling consistent with the contusion that Dr. Veguilla had observed. (Dr. Veguilla Dep. at 16-17). X-rays of Cunningham's thoracic spine revealed an "old injury but no new broken bones or dislocations." (Dr. Veguilla Dep. at 33).

On December 28, 1999, Cunningham claims another correctional officer, Ronald Ruguone, assaulted him. (Pl. Statement ¶ 29). On December 28, Cunningham was to be transferred to the disciplinary unit of the WCADF for a rule violation. (Def. Statement ¶ 47). Pursuant to WCADF rules, Cunningham was handcuffed while kneeling on the floor, prior to the transfer. (Def. Statement

¶¶ 48-49). Cunningham claims that Ruguone pulled him up by his wrists causing him to pass out. (Cunningham Dep. at 96-97). Cunningham claims that later, he regained consciousness partially clothed, with a "large lump" on his left thigh, a shoeprint on his t-shirt, and some light bruising. (Cunningham Dep. at 99-100). Cunningham claims that he drifted in and out of consciousness in pain over the next few days, while correctional officers shined bright overhead lights on him. (Cunningham Dep. at 99-100). On December 30, 1999, Cunningham was taken to the emergency room at Silver Cross Hospital. (Def. Statement ¶ 60). Dr. David Mikolajczak examined Cunningham and observed that he suffered mild tenderness in the paravertabral muscles of the thoracic spine and bilateral swelling in his shoulder. (Def. Statement ¶¶ 62 & 63). Dr. Mikolajczak noticed no bruising or abrasions. (Def. Statement ¶ 64). Dr. Mikolajczak then recommended that Cunningham be x-rayed, but Cunningham refused. (Def. Statement ¶¶ 65-66).

Cunningham claims that after the alleged assaults he continued to be in extreme pain, making it difficult for him to stand, crawl or walk, occasionally needing a wheelchair.² (Pl. Statement ¶ 44-

---

² In his Paragraph 52 of his 56.1 Statement, Cunningham makes a further claim that he "could be found in his cell . . . covered with sores from laying in the mist [sic] of his urine and feces." But the evidence cited for this proposition, the Deposition testimony from Nurse Sloan, does not support this claim. Nurse Sloan never testified that she saw Cunningham "covered with sores." In fact, Nurse Sloan makes no reference whatsoever to "sores." Furthermore, Nurse Sloan never testified that Cunningham was "laying in the mist [sic] of his urine and feces." Instead, she testified that Cunningham sometimes used a styrofoam cup rather than the urinal and that one time she "saw human feces thrown about 4 feet away from his [Cunningham's] bed." (Nurse Sloan Dep. at 58,62). Nurse Sloan further testified that when she inquired about Cunningham's behavior, he responded "that's life." (Nurse Sloan Dep. at 62). Paragraph 52 is therefore stricken. Furthermore, Federal Rule of Civil Procedure 11(b)(3) requires that Counsel certify that "the allegations and other factual contentions [in its pleadings and written motions] have evidentiary support." Clearly, Paragraph 52 lacks any evidentiary support and Counsel for the Plaintiff, Jenner and Block, has blatantly misrepresented the deposition testimony in order to drum up support for Plaintiff's claims. This is inappropriate, and the Court warns Counsel that further misrepresentations, in this or other cases, shall not be tolerated and will require Counsel to show cause why it should not be sanctioned.

45). Cunningham was, however, at times, able to walk, as evidenced in a letter he wrote to his parents where he described walking from a dominos game to an area in the WCADF to watch a football game. (Def. Statement ¶ 81). Cunningham claims that the WCADF staff was aware that he was in pain and despite this awareness refused to provide him with proper medical care. Cunningham claims that WCADF refused to pass along his complaints to the medical staff and threw away grievances that he filed in order to prevent him from obtaining medical care. (Cunningham Dep. 134-138; 196-198).

Despite Cunningham's claims, the record reveals that he did receive medical care. The record reveals that he was seen by WCADF doctors on a regular basis. (Def. Statement ¶ 22). He was also seen by specialists, who attempted to determine the cause of Cunningham's alleged back pain. On January 5, 2000, Cunningham was to be examined by an orthopedist, but he refused to attend the examination. (Def. Statement ¶¶ 67-68). A second examination was scheduled for January 28, but the orthopedist noted in the records that Cunningham was uncooperative. (Dep. Dr. Mirkin at 21). Over a year later, Dr. Nitin Nadkarni conducted a neurological evaluation of Cunningham on March 12, 2001. (Def. Statement ¶ 71). Dr. Nadkarni observed no evidence of spinal cord or nerve dysfunction. (Def. Statement ¶ 72). Dr. Nadkarni recommended several MRIs in order to ascertain the cause of Cunningham's alleged discomfort, but Cunningham never had a second appointment with Dr. Nadkarni. (Dr. Nadkarni Dep. at 16-17).

Two-and-a-half years later, in September 1993, Cunningham received an MRI. The MRI revealed that he had some "small bone spurs and some disc bulges" and "prior compression deformity in the upper thoracic spine." (Dr. Mirkin Dep. at 24). None of these injuries, however,

5

could be attributed to either the August 1999 or December 1999 alleged incidents, but instead were described as degenerative conditions. (Dr. Mirkin Dep. at 25-26).

## II. Standard of Review

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct 2505, 91 L. Ed. 2d 202 (1986); *Alexander v. Wisconsin Dep't of Health and Family Servs.*, 263 F.3d 673, 680 (7th Cir. 2001). In ruling on a motion for summary judgment, however, the court's role is "not to evaluate the weight of the evidence or to determine the truth of the matter," but only to determine whether there is a genuine issue of triable fact. *Outlaw v. Newkirk*, 259 F.3d 833, 836 (7th Cir. 2001). Therefore, doubts are resolved in favor of the non-moving party and the court "considers the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir.2002).

## III. Analysis

*A.  Excessive Force*

Because Cunningham was a pre-trial detainee, his excessive force allegations must be assessed within the context of the Due Process Clause. *See Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Supreme Court has stated that there is no reason to distinguish between convicted inmates and pretrial detainees in the context of excessive force allegations, *Bell v. Wolfish*, 441 U.S. 520, 546 n. 28, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979), and

the Seventh Circuit has therefore assumed that the applicable standard for excessive force claims is provided by the Eighth Amendment, *Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996) (citing *Bell*). The unnecessary and wanton infliction of pain on prisoners violates the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 9965, 117 L. Ed. 2d 156 (1992). The "core judicial inquiry" in an excessive force case is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7; *Outlaw*, 259 F.3d at 837; *Thomas v. Stalter*, 20 F.3d 298, 302 (7th Cir. 1994). In determining whether the use of force was legitimate or malicious, several factors are relevant, including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that the force caused. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 1999) (citing *Hudson*, 503 U.S. at 7); *see also Fillmore v. Page*, 358 F. 3d 496, 504 (7th Cir. 2004).

In order to survive a motion for summary judgment the detainee must have evidence that supports a reliable inference of wantonness in the infliction of pain. *Fillmore*, 358 F.3d at 504 (citing *Whitley v. Albers*, 475 U.S. 312, 322, 106 S. Ct. 1078, 89 L. Ed. 2d 156 (1992)). A plaintiff need not demonstrate a significant injury as a prerequisite to an excessive force claim. *Hudson*, 503 U.S. at 9. Instead, an injury need not even be evident because, as the Supreme Court explains, "[o]therwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* Still, the use of force must be more than *de minimis*, and the extent of any injury may be relevant to determine whether the force used was more than *de minimis*. *See Hudson*, 503 U.S. at 10; *Outlaw*, 259 F.3d at 837-38. Infliction

7

of pain without any penological purpose, however, is *per se* malicious. *Hope v. Pelzer*, 536 U.S. 730, 737, 122 S. Ct. 2508, 153 L. E. 2d. 666 (2002); *Fillmore*, 358 F.3d at 504.

Defendants suggest that the force used by Grozik and Ruguone was related to a legitimate penological interest. According to Defendants, Grozik placed his hand upon Cunningham's shoulder during the lockdown drill and instructed him to lie on the ground. Similarly, Defendants claim that Ruguone placed handcuffs on Cunningham for the purposes of transporting him between units in the WCADF. Cunningham offers a quite different version of events, and on summary judgment the Court must view the evidence in the light most favorable to the non-moving party. *See Thomas*, 20 F.3d at 302. Contrary to Grozik's version of events, Cunningham claims that Grozik slammed him into a wall with sufficient force to cause him to lose consciousness. Moreover, Cunningham claims that Grozik kicked him and yelled at him as he regained consciousness and that Grozik celebrated his actions with fellow officers by "high-fiving" them as he walked away from Cunningham. According to Cunningham, Ruguone also caused him to lose consciousness when Ruguone violently yanked him up with the handcuffs. Short of the need to squelch a prison riot, it is difficult to imagine a legitimate penological need to justify the use of sufficient force to cause an inmate to lose consciousness. But here there is no evidence that Cunningham in any way resisted the commands of WCADF officers or contributed to a disturbance within the detention facility. Furthermore, Grozik's alleged act of celebrating his treatment of Cunningham with other officers suggests a malicious and sadistic purpose. If a jury credits Cunningham's version of events, it could find that the Defendants' actions were not a "good faith effort to maintain or restore discipline," and instead that Grozik and Ruguone inflicted pain on Cunningham solely for malicious and sadistic reasons.

Defendants spend much of their argument focused on the fact that Cunningham's claims to have been injured by the Defendants' actions were the product of his "overactive imagination" and that his claims lack support in the record. (Def. Brief in Support of Summ. J. at 9). Defendants' characterization of the record is inaccurate. Cunningham points to his deposition testimony to support his account of the alleged incidents. Cunningham also points to the deposition testimony of another detainee, Christopher McDonald, who witnessed the August 1999 incident and confirms Cunningham's description of the alleged assault. Defendants argue that after each incident, Cunningham was taken to the emergency room and the treating professionals observed no bruising or abrasions. Defendants argue that because "the physical injuries documented do not correspond to the severity of the allegations made in the complaint" that the force used by the officers must have been *de minimis*.

It is true that an excessive force claim cannot be predicated on a *de minimis* use of physical force. *DeWalt*, 224 F.3d at 620. But the mere absence of any significant, visible injury does not mean that officers used only *de minimis* force. *See, e.g., Winder v. Leak*, 790 F. Supp. 1403, 1406-07 (N.D. Ill. 1992) (knocking handicapped person to the floor and causing pain is not *de minimis* for Eighth Amendment purposes). A significant injury simply is not a prerequisite to an excessive force claim. *Hudson*, 503 U.S. at 9-10. In essence, Defendants invite this Court to assess Cunningham's credibility—Cunningham's observable injuries, they say, do not match with his description of events and therefore Cunningham's deposition testimony should not be credited. But such questions of credibility are best left to a jury. *Dorsey v. St. Joseph County Jail Off.*, 98 F.3d 1527, 1529-30 (7th Cir. 1996). Indeed, when Defendants' counsel questioned Dr. Veguilla, he asked whether "it [would] be unusual for [a] person not to have bruising" if they were slammed into a wall," and Dr.

Veguilla answered that he had "seen patients come in from different altercations and not have any physical evidence of injuries" and that he had "see patients . . . get slammed or hit and not have evidence of it." (Dr. Veguilla Dep. at 18-19). Defendants' argument that Cunningham must be fabricating his story because there was no significant, visible injury amounts to nothing more than Defendants' own speculation, unsupported by any testimony from a medical expert.

Moreover, Defendants' premise that there is no medical evidence in the record to support Cunningham's claims is itself erroneous. Two days after the August 1999 incident, Dr. Veguilla observed that Cunningham had "some pain of his neck . . . [and] some diffuse tenderness of his lumbar spine," and diagnosed Cunningham with a strained neck and back. Two days after the December 1999 incident, Dr. Mikolajczak observed that Cunningham suffered mild tenderness in the paravertabral muscles of the thoracic spine and bilateral swelling in his shoulder. Defendants' argue that Dr. Mikolajczak could not affirmatively conclude that the swelling in Cunningham's shoulder was caused by the alleged assault and therefore summary judgment should be granted in their favor. In this, Defendants mistake Cunningham's burden on summary judgment. Dr. Mikolajczak never testified that Cunningham's injury could *not* have been caused by the alleged December 1999 incident. He only testified that he could not conclude with certainty that it was caused by such incident. Cunningham, however, does not have to show that the undisputed evidence confirms his version of events. He need only point to evidence from which a reasonable finder of fact could find in his favor. Given Cunningham's deposition testimony and the medical findings of Dr. Veguilla and Dr. Mikolajczak, a reasonable jury could find that events unfolded as Cunningham claims and infer that Deputy Grozik and Officer Ruguone assaulted Cunningham without any legitimate penological purpose.

10

In the end, Cunningham and the Defendants present two vastly different stories regarding the alleged incidents of August and December 1999. Summary judgment is a singularly inappropriate time to resolve this kind of "he said, she said" dispute. *Dorsey*, 98 F.3d at 1529-30. Defendants Grozik's and Ruguone's motion for summary judgment on Cunningham's excessive force claims is DENIED.

*B.     Deliberate Indifference*

The remaining Defendants, all alleged by Cunningham to have denied him medical care, also move for summary judgment. To avoid summary judgment on his medical-care claims, Cunningham must present evidence that WCADF officers acted with deliberate indifference to a substantial risk of harm. *Estelle v. Gamble*, 429 U.S. 97, 104-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). This standard requires Cunningham to establish that: (1) his condition was objectively serious; and (2) WCADF officers acted with deliberate indifference to his medical needs, which is a subjective standard. *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002). In other words, the Defendants must be "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Officials can be deliberately indifferent if they intentionally deny or delay access to medical care or interfere with treatment once prescribed. *Estelle*, 429 U.S. at 104-05. However, a prisoner who complains that a delay in treatment rose to a constitutional violation must place "verifying medical evidence" in the record that the delay adversely affected his condition. *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

Cunningham complains that the Defendants interfered with his right to receive medical care in two ways: 1) they refused to pass along complaints raised by Cunningham to the medical staff; 2) they threw away grievances he filed against them so that he would not receive medical attention. Cunningham, however, ignores the facts that he did, in fact, receive medical care. After the alleged August 1999 incident, he was taken to the emergency room and seen by Dr. Veguilla, who took a CAT scan and x-rays. After the alleged December 1999 incident, Cunningham was seen by Dr. Mikolajczak. During this examination Cunningham *refused* to be x-rayed, despite Dr. Mikolajczak's recommendation. In January 2000, Cunningham refused to attend one examination and, according to an orthopedist, was uncooperative when he was examined at a later date. In March 2001, Dr. Nadkarni conducted a neurological examination of Cunningham. In the 20 months following the first alleged assault, Cunningham was seen by at least four doctors and he points to no evidence that WCADF officials ignored any treatment prescribed by these doctors.

Cunningham nevertheless argues that, despite the fact that multiple doctors treated him, he "suffered for years with certain serious underlying medical needs that have not on ay occasion been treated or diagnosed" and therefore the WCADF officers must have been deliberately indifferent to his medical needs. (Pl. Resp. Br. at 14). Cunningham's argument is unconvincing. To the extent that Cunningham appears to claim that the WCADF officers should have been able to diagnose and treat an alleged conversion disorder and a preexisting compression fracture in his spine, the constitution places no such burden on ordinary prison officers. Indeed, even the four doctors who treated Cunningham between 1999 and 2001 failed to diagnose these injuries. Cunningham also argues that the WCADF officers were aware that he was in severe pain for which he needed treatment and instead of referring him to medical staff they withheld information about his pain and

12

even intentionally delayed his medical treatment by throwing away his grievances. Even assuming that the medical staff did throw away his grievances (a fact for which Cunningham presents no direct evidence in support), it would not be clear that the WCADF officers were responsible for any delay in treating Cunningham's condition. That is because Cunningham himself had ample opportunity to inform the medical staff of his alleged suffering. He had appointments with at least four doctors between August 1999 and March 2001, and yet did not once mention any of his alleged suffering to these doctors. Cunningham claims to be off the hook for his failure to communicate his pain with the doctors because, according to him, "[t]hese visits focused on [his] immediate needs and were not aimed at treating or otherwise addressing [his] more serious and disregarded illness and injuries." (Pl. Resp. Br. at 14). But nothing prevented Cunningham from raising his concerns about his condition during these visits. He simply chose not to do so. He cannot now argue that Defendants interfered with his medical needs by refusing to pass along complaints that Cunningham himself failed to pass on. Finally, even assuming the Defendants did intentionally delay his medical care, Cunningham point to no verifiable medical evidence that this delay adversely affected his condition. Nothing in the record suggests that Cunningham's alleged conversion disorder or preexisting compression fracture worsened because of the delay in treatment.

Cunningham received medical care throughout his stay at WCADF and never once voiced a concern to any of the doctors who treated him that his medical needs were not being met. His argument that Defendants interfered with his medical needs by refusing to pass along complaints is without merit. Defendants motion for summary judgment with regard to Cunningham's deliberate indifference claim is GRANTED as to all Defendants and that claim is dismissed in its entirety.

IV. Conclusion

There is a genuine dispute of material fact as to the events that occurred on August 21 and December 28, 1999, making summary judgment with regard to Cunningham's excessive force claims against Deputy Grozik and Officer Ruguone inappropriate. Deputy Grozik's and Officer Ruguone's motion for summary judgment on Cunningham's excessive force claims is therefore DENIED. There is not, however, any dispute of material fact as to whether any of the Defendants was deliberately indifferent to Cunningham's serious medical needs. Summary judgment in favor of all Defendants, including Officer Ruguone, with regard to Cunningham's deliberate indifference claim is GRANTED. Cunningham's complaint is DISMISSED as to Defendants Jones, Chester, Cerillo, Langford, Martin, Parker, and Beck.

IT IS SO ORDERED

4/30/04
Dated

The Honorable William J. Hibbler
United States District Court